The jurisdiction exercised by courts of equity in setting aside and canceling void instruments will appear to be involved in some confusion, unless the proper distinctions are observed. Bills have been filed for the purpose of canceling promissory notes, bills of exchange, policies of insurance, bonds, c., as well as deeds, mortgages and other instruments affecting real estate; and all these have been repeatedly entertained by the courts. There is, however, an obvious distinction between those instruments which merely create a personal claim against a complainant, and those which affect his property, and especially his real estate. The first can rarely do him any injury so long as they remain dormant, while the latter may create such a cloud upon his title as seriously to impair its value.
In the first of these two classes of cases, the question is involved in some doubt, whether courts of equity will interfere to set aside the instrument, where there is a complete defence at law. Lord THURLOW was inclined not to entertain jurisdiction in such cases. (Ryan v. Mackmath, 3 Bro. C.C., 15; Colman v.Sarrel, 1 Ves., 50; Hilton v. Barrow, id., 284.) But Lord LOUGHBOROUGH, afterwards, in Newman v. Milner (2 Ves.,
483), and Lord ELDON, in Bromley v. Holland (7 id., 3), and in Jervis v. White (id., 413), took the opposite ground. Chief Baron RICHARDS, also, in Duncan v. Worrall (10 Price,
31), admitted with apparent reluctance that relief might be given in equity against a policy of insurance, notwithstanding it was entirely void at law.
In cases, however, where the title to real estate is or may be affected, it seems never to have been regarded as a sufficient objection to a bill seeking relief in equity, that the complainant has a perfect legal defence. The distinction seems to have been first practically taken in the case of *Page 526 Byne v. Vivian (5 Ves., 604), which belongs to a class of English cases known as the annuity cases. It was a bill to set aside and cancel an annuity bond, and came before Lord Chancellor LOUGHBOROUGH, in 1800. In 1797, three years before, the same learned chancellor had decided the case of Franco v. Bolton
(3 Ves., 371), refusing to set aside a similar bond, although void, on the ground that since the case of Collins v.Blantern (2 Wils., 341), the defence was available at law. InByne v. Vivian, however, he sustained the bill and canceled the bond.
On looking into the latter case we see a plain reason for this apparent inconsistency. In Franco v. Bolton the annuity was secured by the mere personal bond of the grantor, while in Byne
v. Vivian the bond was accompanied by a mortgage of real estate. The arguments of counsel in this last case are worthy of notice, as initiating, or at least insisting upon, two distinctions, both of which have become a part of the settled law on this subject. The objection to the annuity arose under the act of 17 George III. (ch. 26), called the annuity act, which provided that "a memorial of every deed, bond, instrument, or other assurance, whereby any annuity should be granted after the passing the act, should be enrolled in the Court of Chancery,"c. The memorial in this case was defective and the annuity void. MANSFIELD, for the defendant, insisted that the court ought not to entertain jurisdiction, for the reason not only that there was a good defence at law, but that that defence appeared upon the face of the proceedings under which the defendant must claim. He said: "In this case the proof lies upon the person who wishes to avail himself of the instrument. He must produce a memorial;
and if he does not, the other party may get a copy of it from the office."
Sir JOHN MITFORD, on the other hand, pressed the consideration that the securities affected the title to real estate. He said: "This is an incumbrance upon the estate, which cannot be disposed of till this term is disposed of. A court *Page 527 
of equity has taken jurisdiction in cases where the security has been void at law. The party has a right to come to have the property cleared, and that the other shall not retain the security merely to keep a cloud upon the title." It goes to show the force of the consideration, that the securities were a cloud upon the title, that it was sufficient, in the view of the chancellor, to overcome the very cogent argument of Mr. MANSFIELD.
The case of Byne v. Potter (5 Ves., 609) arose immediately after that of Byne v. Vivian, and being precisely similar was decided in the same way.
A few months afterwards the case of Bromley v. Holland (5Ves., 610), an annuity case, similar in its features to the two last, came before the Master of the Rolls, who hesitated to follow the decision of Lord LOUGHBOROUGH, and made a somewhat modified decree; but when the case came up on appeal (7 Ves.,
3), Lord ELDON, who had succeeded Lord LOUGHBOROUGH as chancellor, reversed the decree of the Master of the Rolls, and made a decree in accordance with the decisions in Byne v.Vivian and Byne v. Potter. In doing this he seems to have been influenced mainly by the distinction taken by Sir JOHN MITFORD, in Byne v. Vivian, between mere personal securities and those which create a cloud upon title. He says: "Whatever difference there may have been in such cases (upon bills of exchange, notes, c.), it seems to me there is considerable difference between the case of a bill of exchange, upon which, on the face of it, there can be no demand, and an instrument which, upon the face of it, purports to affect real property;" but he also said that if the question were res integra his mind "would be considerably affected by the very able argument addressed to the court by Mr. MANSFIELD, in Byne v. Vivian."
That argument would no doubt have prevailed, but for the great weight given to the consideration that the securities cast an apparent shade over the title. The distinction between cases where the invalidity of the instrument appears *Page 528 
upon its face and where it does not, is now universally recognized; although Chancellor KENT, in Hamilton v. Cummings
(1 John. Ch. R., 517), came to the conclusion, after an elaborate review of the cases, that it was unsound. In Simpson
v. Lord Howden (3 Myl. Craig, 99), Lord Chancellor COTTENHAM allowed a demurrer to a bill, filed to set aside an agreement void as against public policy, on the ground that the illegality was apparent upon the face of the instrument. The same has been held in several cases in our own and other American courts. (Mayor, c., of Brooklyn v. Meserole, 26 Wend.,
136; Van Doren v. Mayor, c., of N.Y., 9 Paige, 388; Cox
v. Clift, 2 Comst., 118; Piersall v. Elliott, 6 Peters,
95.)
But none of these cases contain anything which in the least impairs the doctrine advanced in Byne v. Vivian and the subsequent cases, that a court of equity will entertain jurisdiction of a suit to set aside a deed or instrument, although it may be void at law, provided it purports to affect real estate and will cast a cloud upon it. They merely ingraft upon that doctrine this additional proviso, viz., that if its invalidity appears upon the face of the deed itself, or of the proceedings which the party claiming under it must necessarily produce in order to establish a title, the court will not relieve.
It is suggested that in this case the defect does appear upon the face of the mortgage, as it is not executed and does not purport to be executed by the plaintiffs. That defect, however, does not become apparent until the plaintiffs have first established their title by extrinsic evidence. It is clearly, therefore, not a case where the invalidity of the instrument appears upon its face; neither is it a case in which, in the graphic language of Judge GARDINER, in Cox v. Clift
(supra), the plaintiffs have "a perfect legal defence written down in the title deeds of their adversary." None of the cases, therefore, in which relief has been denied upon that ground, have any direct bearing upon this. *Page 529 
Does the mortgage in question, then, create a cloud upon the plaintiffs' title? None of the cases define what is meant by a cloud upon title, nor attempt to lay down any general rules by which what will constitute such a cloud may be ascertained. Each case seems to have been decided upon its own peculiar circumstances. There are some things, however, which may be regarded as certain: a cloud upon a title does not mean a legal as contradistinguished from an equitable title; a deed, as we have seen, may constitute a cloud upon the title, although the defence is as perfect in law as in equity. It is to be inferred from the cases, as well as from the natural import of the term, that anything is a cloud which is calculated to cast doubt or suspicion upon the title, or seriously to embarrass the owner, either in maintaining his rights or in disposing of the property.
On the other hand it is equally clear that the mere existence of a deed purporting to convey certain premises, but accompanied by no circumstances giving it apparent validity, would not operate as such a cloud upon the title as to justify the interposition of the court. If an entire stranger assumes to convey the premises to which he has no shadow of title, and of which another is in possession, no real cloud is thereby created. There is nothing to give such a deed even the semblance of force. It can never be used to the serious annoyance or injury of the owner. A word of explanation would dissipate the apparent cloud.
But it may, I think, be safely assumed that when such circumstances exist, in connection with a deed, as not only give to it an apparent validity, but will enable the grantor to make out a prima facie title under it, a cloud is created. It cannot be necessary, to constitute a cloud, that the conveyance should be sufficient per se, without being connected with any other evidence, to make out a prima facie title; because no conveyance, even if valid, could do this. In showing title under a deed by the grantee himself, or in showing that the deed constitutes a cloud upon another's *Page 530 
title, it is necessary to show some sort of title, either real or apparent, in the grantor. But is it material in what manner the title of the grantor is shown? Suppose a grantee in a deed, void for some reason not appearing upon its face nor in any of the previous deeds, is able to show a regular chain of conveyances from the people of the state down to his immediate grantor, then, of course, no one could doubt that the deed would constitute a cloud upon the title. But suppose in tracing back the title to its ultimate source, a grantor is found who was, at the time of the conveyance, in actual possession of the premises, is it necessary to go farther? It clearly would not be, in making title under the deed; neither, I apprehend, could it be in showing that the deed created a cloud upon the title. Were it otherwise, a cloud could never be shown short of showing a chain of conveyances from the people down. Can it make any difference, then, how far back it is necessary to go before arriving at a grantor in possession? Is not the evidence of title just as strong in case the immediate grantor, as if any remote grantor, was in possession? There can be but one answer to these questions.
Let us, then, apply these principles to the present case. The mortgagors, owning one-half the premises and being in possession of the whole, execute a mortgage upon the whole. These facts would be sufficient to maintain an ejectment suit against the plaintiffs, and to turn them out of possession. Can it be said that a deed which would enable the grantor to overcome the primafacie evidence of title which actual possession affords, does not constitute a cloud upon the title? It is no answer to say that the plaintiffs, by introducing evidence on their part, could overthrow the title made under the mortgage. This is so in every case where a mere cloud exists.
It is said that, to maintain the suit, the plaintiffs "must be in danger of or must have cause to fear an injury or obstruction to their legal title," and that the fear must be well *Page 531 
founded. This position I think unsound. The idea of real danger is not necessarily involved in that of a cloud upon title. If the title is obscured, so as to render the right of the real owner less clear, there is a cloud. If it will embarrass the owner in making a sale of the property, he is injured; and this consideration was urged in the earliest cases on the subject, as will be seen by referring to the argument of Sir JOHN MITFORD, inByne v. Vivian (5 Ves., 604).
Another position taken by the defendant's counsel is, that as the mortgagors and the plaintiffs were tenants in common, the possession of one was the possession of all. This, in my view, is the most plausible answer given to the plaintiffs' case. The complaint, however, avers that the mortgagors were in the sole and exclusive occupation of the premises; and this allegation is admitted by the demurrer. The possession of one tenant in common may be exclusive, where his co-tenant is ousted. The point rests, therefore, upon the distinction between occupation and possession. There is, no doubt, a distinction between the two, because there may be a legal or constructive possession where there is no actual occupation. This, however, cannot, I think, be material in the present case. Suppose an ejectment suit brought upon a claim of title under this mortgage: all that the plaintiff would have to show would be the mortgage and exclusive occupation by the mortgagors. The plaintiffs in this case, having no actual possession, but at most only a constructive possession, would be as effectually driven to the proof of their title, by that evidence, as if there had been no tenancy in common.
The complaint alleges that the defendant has proceeded to foreclose the mortgage, and has obtained the usual judgment of foreclosure; and that he has published a notice of sale in which he describes the entire farm as the premises to be sold. Under these circumstances my own conclusion would have been that the mortgage does create a cloud upon *Page 532 
the title of the plaintiffs, and that the judgment should be affirmed; but my associates think that the case does not show, in other words that the demurrer does not admit, that the mortgagors were, at the time of the execution of the mortgage, in the exclusive possession of the mortgaged premises, and, assuming that they are right in this, I concede that the judgment should be reversed.
ROOSEVELT, J., concurred in the opinion of SELDEN, J.; all the others in that of PRATT, J.
Judgment at general term reversed, and that at special term affirmed.